## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| **AARON PRATER**, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | **Case No. 23-cv-2572-EFM-TJJ** |
| **JOHNSON COUNTY COMMUNITY** | ) | |
| **COLLEGE, ET AL.** | ) | |
| | ) | |
| Defendants. | ) | |

## OPENING BRIEF IN SUPPORT OF THE COLLEGE'S
## MOTION TO DISMISS THE SECOND AMENDED COMPLAINT

# TABLE OF CONTENTS

**Page**

TABLE OF CONTENTS ................................................................................................ i

TABLE OF AUTHORITIES ......................................................................................... ii

SPECIFIC RELIEF SOUGHT ...................................................................................... 1

NATURE OF THE MATTER BEFORE THE COURT ................................................ 1

STATEMENT OF FACTS ............................................................................................ 4

ARGUMENTS AND AUTHORITIES ......................................................................... 6

I.      STANDARD OF REVIEW ................................................................................ 6

II.     PLAINTIFF FAILS TO STATE A CLAIM FOR RETALIATORY
        DISCHARGE UNDER KANSAS COMMON LAW ......................................... 6

        A.      Plaintiff Fails To Plead The College Violated Rules, Regulations Or Laws
                Pertaining To Public Safety. ................................................................. 6

        B.      Plaintiff Fails To State A Claim For Retaliatory Discharge Because There Are
                Adequate, Alternative Remedies. ........................................................ 10

        C.      Plaintiff Fails To Plead Facts Supporting The Existence of Causation. ................. 11

III.    PLAINTIFF FAILS TO STATE A CLAIM FOR RETALIATION UNDER
        THE FOOD SAFETY MODERNIZATION ACT .......................................... 12

IV.     PLAINTIFF FAILS TO STATE A CLAIM FOR RETALIATION IN
        VIOLATION OF TITLE IX ............................................................................ 14

CONCLUSION ............................................................................................................ 15

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Bunker v. City of Olathe*,
  2001 WL 230364 (D. Kan. 2001) ............................................................................ 10

*Cavalier v. Catholic Univ. of Am.*,
  306 F. Supp. 3d 9 (D.D.C. 2018) ............................................................................ 14

*Diebold v. Spring/United Mgmt. Co.*,
  2002 WL 1071923 (D. Kan. 2002) ....................................................................... 7, 9

*Doe v. Kansas State Univ.*,
  499 P.3d 1136 (Kan. Ct. App. 2021) ........................................................................ 8

*Harewood v. Cloud Cnty. Comm. Coll.*,
  2019 WL 2717165 (D. Kan. 2019) ........................................................................... 9

*In re Due Process Hearing*,
  2023 WL 1866808 (Dist. Ct. Johnson Cnty, Kan.) (Feb. 9, 2023) ................... 1, 2, 3

*Jallali v. USA Funds*,
  2012 WL 3291873 (S.D. Fla. 2012) ....................................................................... 13

*Johnson Cnty. Comm. Coll. v. Prater*,
  538 P.3d 857 (Table) (Kan. Ct. App. 2023) ............................................................. 2

*Jones v. Core Civic Corp.*,
  2018 WL 5112272 (D. Kan. 2018) ........................................................................... 6

*Meiners v. Univ. of Kan.*,
  359 F.3d 1222 (10th Cir. 2004) ............................................................................. 12

*Merkel v. Leavenworth County Emergency Medical Servs.*,
  2000 WL 127266 (D. Kan. 2000) ..................................................................... 10, 11

*Murdock v. City of Wichita*,
  2012 WL 4210471 (D. Kan. 2012) ..................................................................... 14, 15

*Palmer v. Brown*,
  752 P.2d 685 (Kan. 1998) ................................................................................... 7, 11

*Palmer v. Pentair*,
  2019 WL 3239350 (D. Kan. 2019) ........................................................................... 9

*Proctor v. United Parcel Serv.*,
    502 F.3d 1200 (10th Cir. 2007) ...................................................................... 12, 14, 15

*Quinn v. City of Bel Aire*,
    2007 WL 628186 (D. Kan. 2007) ............................................................................ 10

*Ross v. Pentair Flow Technologies, Inc.*,
    2020 WL 1028304 (D. Kan. 2020) ............................................................................. 9

*Seifert v. Unified Gov't of Wyandotte Cnty./Kansas City*,
    779 F.3d 1141 (10th Cir. 2015) ............................................................................... 10

*Souders v. Mount St. Joseph Univ.*,
    2016 WL 8671966 (S.D. Ohio 2016) ......................................................................... 8

*Tanksley v. Rice County Sheriff's Office*,
    2021 WL 1210280 (D. Kan. 2021) ..................................................................... 10, 11

*Wanjiku v. Johnson Cnty.*,
    173 F. Supp.3d 1217 (D. Kan. 2016) ......................................................................... 1

*Wilson v. E.I. Dupont De Nemours and Co.*,
    2017 WL 960395 (D. Del. 2017) .............................................................................. 13

*Wooten v. Dep't of Treasury*,
    149 F.3d 1192 (Table) .............................................................................................. 15

**Statutes**

15 U.S.C. § 2087(b) ...................................................................................................... 13

21 U.S.C.  § 399d(b)(4) ................................................................................................ 13

21 U.S.C. § 321 ............................................................................................................ 14

21 U.S.C. § 331(a) ....................................................................................................... 13

21 U.S.C. § 333(a) ....................................................................................................... 14

21 U.S.C. § 342(a)(3) ................................................................................................... 13

21 U.S.C. § 399 ............................................................................................................. 4

21 U.S.C. § 399d ........................................................................................................... 1

21 U.S.C. § 399d(b)(1) ........................................................................................... 12

29 U.S.C. § 218c(b)(1) ........................................................................................... 13

42 U.S.C. § 1983 .................................................................................................... 10

K.S.A. § 65-657(r) ................................................................................................. 8

K.S.A. § 65-656(v) ................................................................................................ 9

K.S.A. § 72-2251 ................................................................................................... 1

K.S.A. § 60-2101(d) .............................................................................................. 2

**Rules**

Federal Rule of Civil Procedure 12(b)(6) ............................................................. 1

**Regulations**

34 C.F.R. § 99 ....................................................................................................... 7

34 C.F.R. § 99.31(a)(1)(i)(A) ................................................................................ 7

## SPECIFIC RELIEF SOUGHT

Johnson County Community College ("the College") seeks dismissal of all Plaintiff's claims against it for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6).

## NATURE OF THE MATTER BEFORE THE COURT

Plaintiff Aaron Prater is a former faculty member in the Department of Hospitality at the College. In the spring of 2021, two of Plaintiff's colleagues filed hostile environment complaints against him with the College's Department of Human Resources. To ensure a comprehensive and impartial investigation, the College hired an outside investigator, whose investigation found that Plaintiff engaged in various acts of misconduct, including routinely yelling at a non-faculty staff member causing her to vomit before work and instigating angry and threatening confrontations with his department chair. Shortly thereafter, the College's Board of Trustees notified Plaintiff of his termination for violating numerous College policies and standards, including those requiring employees to be professional, courteous, and to engage in constructive conflict resolution.

Under the Kansas Due Process Act ("KDPA"), K.S.A. § 72-2251 et seq., Plaintiff had the right to challenge the Board's decision through a due process hearing before a neutral hearing officer. Plaintiff initiated a due process review under the KDPA, arguing that the College's evidence did not support *any* of the Board's asserted grounds for termination *and* that the Board's action was taken in retaliation for Plaintiff's having raised various complaints about the College and the Department. The hearing officer concluded that the College's decision to terminate Plaintiff's employment was *not* retaliatory, and the hearing officer agreed with the College that Plaintiff failed to engage in constructive conflict resolution. *See* **Ex. 1**, *In re Due Process Hearing*, 2023 WL 1866808, at *3 and 10 (Dist. Ct. Johnson Cnty, Kan.) (Feb. 9, 2023).[1]  Nonetheless, the

---

[1] Although the Court may take judicial notice of state court decisions, *Wanjiku v. Johnson Cnty.*, 173 F. Supp.3d 1217, 1232 (D. Kan. 2016) (collecting cases), the College provides this decision and the related appellate decision for

hearing officer imposed an alternative punishment of probation and anger management counseling, instead of affirming the Board's termination decision outright. *Id.* at *3.

The College appealed[2] the hearing officer's decision to the state trial court, which found the hearing officer had no authority to impose an alternative punishment and that the hearing officer applied an overly rigorous standard of review to the College's evidence, which may have led the hearing officer to improperly reject *other* of the College's asserted grounds for termination. *Id.* at *7-10. But the trial court (erroneously, in the College's view) chose to remand the matter to the hearing officer, instead of simply reversing and entering an order upholding termination. *Id.* *10. Nonetheless, it suggested the hearing officer's failure to uphold termination was wrong:

> The Court concludes here that the hearing officer did apply an unauthorized or illegal standard of review over the college's termination decision. He did not review the evidence with the required objective standard. Since the Court is unable to do its own factfinding, it can only question the bases for the hearing officer's decision. In this case, that decision is suspect. He appears to have placed a higher burden upon the college to show substantial evidence [to support termination] than the law allows.

*Id.* at *9.

The College appealed, contending the trial court should have entered an order affirming the Board's termination decision instead of remanding, but the Kansas Court of Appeals held that an appeal of the trial court's order was premature. *See generally* **Ex. 2**, *Johnson Cnty. Comm. Coll. v. Prater*, 538 P.3d 857 (Table) (Kan. Ct. App. 2023). Thus, the subject of Plaintiff's termination is currently pending on remand before the hearing officer.

Despite that the hearing officer already rejected his claim of retaliation, and despite that the KDPA process is still on remand to the hearing officer, Plaintiff filed this lawsuit in an

---

context and does not rely on them for any of the arguments in the present motion.

2  Pursuant to K.S.A. § 60-2101(d).

improper attempt to circumvent the KDPA.   Indeed, his Second Amended Complaint asserts retaliatory discharge claims that presuppose ***the very retaliation*** the hearing officer rejected.

Separate and apart from his flawed retaliation claims against the College, Plaintiff also brings First Amendment retaliation claims against various College employees (including one of the two who filed the human resources complaint *against* Plaintiff), who he claims were responsible for his termination, even though the circumstances of Plaintiff's misconduct were investigated by an outside investigator, the Board made the decision to terminate his employment, and the hearing officer already concluded the Board's decision was not retaliatory.

From this history, it should be obvious that this entire lawsuit is meritless and an ill-fated attempt to relitigate the issue of retaliation and avoid the imminent outcome of the KDPA process.[3] Both issue preclusion and claim preclusion bar any such attempt, and the College is fully prepared to brief those defenses through an appropriate procedural mechanism, if needed.   However, Plaintiff's claims fail for entirely separate and fundamental reasons, and the Court should dismiss them now before needing to engage with those defenses.

Indeed, Plaintiff's Count I for retaliatory discharge against the College fails because: (1) Plaintiff does not plead facts suggesting a reasonable person could find the College violated the laws Plaintiff claims he was whistleblowing about; (2) Plaintiff has adequate statutory remedies that preclude his common law retaliatory discharge claim; and (3) Plaintiff failed to plead a causal

---

[3] To be clear, Plaintiff's present claims are barred by the issue preclusive and/or claim preclusive effects of the hearing officer's findings on retaliation and Plaintiff's *failure* to timely appeal those findings to the state trial court, which render them final.  *See In re Due Process Hearing*, 2023 WL 1866808, at *2 ("Plaintiff raised an issue of retaliation with the college and before the hearing officer.  He had the burden of proof on that issue and failed to persuade the hearing officer that the college's action against him was retaliatory.  That issue is not part of this appeal or properly before this Court.  *It is final*.") (emphasis added).  Nonetheless, because Plaintiff's Second Amended Complaint conveniently makes no reference to the hearing officer's actual findings and does not attach the various pleadings and decisional documents from the KDPA hearing and state trial court proceedings, and because Plaintiff's claims fail for other, threshold reasons, the College has elected not to present the preclusion defenses at this early stage.

connection between any claimed protected activity under common law and his termination.

Plaintiff's Count III for retaliation in violation of the Food Safety Modernization Act ("FSMA"), 21 U.S.C. § 399 fails because: (1) Plaintiff did not exhaust a required administrative remedy and (2) Plaintiff fails to plead a causal connection between any protected activity under the FSMA and his termination.

Finally, Plaintiff's Count IV for retaliation under Title IX fails because Plaintiff does not plead a causal connection between any protected activity under Title IX and his termination.

This Court should dismiss all of Plaintiff's claims against the College.

## STATEMENT OF FACTS[4]

Plaintiff was a faculty member in the Hospitality Department at the College. Second Amended Complaint ("SAC") ¶¶ 15 and 16. In March 2021, two of Plaintiff's colleagues filed complaints about him with the College. *Id.* ¶ 34. The College initiated an investigation of the two complaints, as well as certain concerns Plaintiff raised regarding retaliation. *Id.* ¶ 37.

The College retained the services of an outside investigator, who submitted a written investigation report in July 2021. *Id.* ¶ 40. On July 16, 2021, after the investigator completed her report, the College issued a letter notifying Plaintiff that the investigation concluded he "engaged in conduct and interactions that fall below the expectations of professionalism, courtesy, dignity, and respect," and notified Plaintiff he was placed on administrative leave. *Id.* ¶ 67. Plaintiff alleges this letter was hand-delivered to him, but not "on July 16, or shortly thereafter," because the College used an "old address" for the letter. *Id.*

On August 31, 2021, the College issued a letter to Plaintiff notifying him that the

---

[4] As it must at this stage, the College confines its Statement of Facts to those set forth in Plaintiff's Second Amended Complaint and the documents expressly incorporated into or integral to the same. The College recites only those facts germane to the arguments it makes in the present motion and reserves its right to dispute them later.

investigation was complete, and that a preponderance of the evidence established he failed to meet his job expectations in multiple ways, including by "exhibiting hostile behaviors, including yelling at coworkers and speaking to others rudely." *Id.* ¶ 68.

In early September 2021, Dr. Mickey McCloud, Chief Academic Officer and Executive Vice President of Academic Affairs, sent Plaintiff a letter informing Plaintiff that Dr. McCloud was recommending to the College's Board that Plaintiff's employment be terminated. *Id.* ¶ 69.

The Board voted to terminate Plaintiff's employment,[5] and the Board chair provided Plaintiff written notice of such termination through a letter issued in mid-September 2021. *Id.* ¶ 70.  After receiving the chair's letter, Plaintiff requested a due process hearing. *Id.* ¶ 71.  A due process hearing was held and included testimony from multiple witnesses. *Id.* ¶¶ 44-63.

In November 2018, Plaintiff "alerted Dean Cox of a violation of the Family and Educational Rights and Privacy Act ["FERPA"] by Director of Hospitality, Mik Milster." *Id.* ¶ 72.  In September 2019, two years before his termination, Plaintiff alerted Dean Cox of a second FERPA violation regarding [Milster]." *Id.* ¶ 75.  Plaintiff "then reported the second FERPA violation to Leslie Quinn, Director of Enrollment Services & Registrar." *Id.* ¶ 80.

Plaintiff "also reported instances of sex discrimination and sex harassment of women to Trustee Cross," and to "Cox and McCloud as well." *Id.* ¶ 82.  The alleged "sex discrimination and sex harassment of women" included (1) a Fall 2020 report that Mik Milster "made comments of a sexual nature *about* female students"; and (2) a report (date unknown) that a colleague, Michelle Riley, was not compensated the same as male colleagues. *Id.* ¶¶ 83-84 (emphasis added).

Additionally, Plaintiff reported "mishandling of food, purchasing practices of food and

---

[5]  Plaintiff's Second Amended Complaint fails to mention that he attended the meeting where the Board voted to terminate his employment and addressed the Board.  This point is immaterial for the present motion but is yet another example of how Plaintiff weaves a misleading narrative by omitting key facts.

similar instances," including that: (1) food had been "improperly stored on the floor and that food in various stages of rot was maintained; (2) an eye wash station was not accessible; (3) "meat had been improperly stored above foods like vegetables,"; (4) some food provided "to faculty for a class was unusable and had 'obvious molding'; and (5) basil "provided to him for a class 'was wilting and turning slimy." *See id.* ¶¶87-91. The last of these alleged complaints—the one about basil—was in February 2021, over seven months before Plaintiff's termination. *Id.* ¶ 93.

## ARGUMENTS AND AUTHORITIES

### I.   STANDARD OF REVIEW

Under Rule 12(b)(6), a court should dismiss a complaint that fails to state a claim upon which relief can be granted. To survive a Rule 12(b)(6) motion, a "complaint must contain enough allegations of fact to state a claim to relief that is plausible on its face. *Jones v. Core Civic Corp.*, 2018 WL 5112272, at *2 (D. Kan. 2018). While all "well-pleaded facts and reasonable inferences derived from those facts are viewed in the light most favorable to the plaintiff," "[c]onclusory allegations . . . have no bearing upon the court's consideration." *Id.* (internal citations omitted).

### II.   PLAINTIFF FAILS TO STATE A CLAIM FOR RETALIATORY DISCHARGE UNDER KANSAS COMMON LAW

#### A.   Plaintiff Fails To Plead The College Violated Rules, Regulations Or Laws Pertaining To Public Safety.

In Count I, Plaintiff asserts a Kansas common law claim for retaliatory discharge based on his alleged whistleblowing about the College's supposed violation of FERPA and "Kansas Administrative Regulations related to food safety . . . and the Kansas Food, Drug, and Cosmetic Act." SAC ¶ 97. To state such a claim, Plaintiff must put forth "clear and convincing" evidence that a "reasonably prudent person" would have concluded the College was "engaged in activities in violation of rules, regulations, or the law pertaining to public health, safety, and the general welfare," that the College had knowledge Plaintiff reported such alleged violations "prior to his

discharge," and that the College, in fact, terminated Plaintiff's employment "in retaliation for making the report." *Palmer v. Brown*, 752 P.2d 685, 690 (Kan. 1998).

As this Court has observed, "In all of the whistleblowing cases which the Court has examined, plaintiffs clearly identified the action which allegedly violated the law and precipitated the whistleblowing. *Diebold v. Spring/United Mgmt. Co.*, 2002 WL 1071923, at *3 (D. Kan. 2002) (collecting cases and dismissing plaintiff's claim for failing to adequately plead the facts of an alleged violation). Here, Plaintiff does not do that.

Take for example, Plaintiff's allegation that he reported violations of FERPA, a regulatory law that requires the College to maintain the confidentiality of personally identifiable student *records* as a condition of receiving federal financial aid. *See generally* 34 C.F.R. § 99.  Plaintiff alleges that a *student* told Plaintiff that the student *heard* the then-Director of Hospitality, Mik Milster, "discussing a student's failure who had attempted to gain certification as a sous chef." *Id.* ¶ 73.  Plaintiff does not even allege that a *record* was disclosed, because an oral statement is not a record.  Moreover, he does not allege who Mr. Milster was overhead speaking to.  This is critical, because FERPA permits records to be shared with other employees.[6]

Plaintiff also claims that "several students and a professor" told Plaintiff that Mr. Milster "had informed an entire class about the lack of academic progress of one student." *Id.* ¶ 76.  Again, Plaintiff does not allege that a *record* was disclosed.  And he does not specify what a "lack of academic progress" even means.  Did Mr. Milster simply tell the class a student had dropped out? If so, this would not violate FERPA at all.  The bottom line is that a "reasonably prudent person" simply could not conclude the College violated FERPA.

---

[6] Along with numerous other exceptions to confidentiality, FERPA specifically permits the disclosure of personally identifiable student records to other employees of the educational institution with a legitimate educational interest. *See* 34 C.F.R. § 99.31(a)(1)(i)(A).

Moreover, FERPA is a federal law that governs the confidentiality of student records, but it has nothing to do with health, safety, or general welfare.  It is not even privately enforceable. *See Doe v. Kansas State Univ.*, 499 P.3d 1136, 1145 (Kan. Ct. App. 2021) ("FERPA creates no private right of action and does not address individual instances of disclosure.").  Indeed, no Kansas court has approved a retaliatory discharge claim predicated on an alleged reported violation of FERPA, and the only court that has considered such a claim (under Ohio law) determined that FERPA is not the kind of health, safety, or general welfare law that can support a common law claim for retaliatory discharge predicated on whistleblowing.  *Souders v. Mount St. Joseph Univ.*, 2016 WL 8671966, at *9 (S.D. Ohio 2016) (FERPA not a public health of safety statute).

Similarly inadequate are Plaintiff's allegations that he reported violations of Kansas Administrative Regulations and the Kansas Food, Drug, and Cosmetic Act ("KFDCA").  While Plaintiff claims he reported moldy and wilting vegetables intended for use in class, meat stored above other food, meat stored on the floor, and a poorly working eye-wash station, he fails to explain how any of the Kansas regulations or the KFDCA applies to *the College*, nor does he identify any provisions of those laws that a reasonable person could conclude were violated.

Plaintiff's SAC does not reference any specific provision of the Kansas Administrative Regulations, so we have no idea what regulations he even *claims* are violated.  As it pertains to the KFDCA, Plaintiff notes that the law "makes it unlawful to fail to protect meats, fish, fowl or game for human consumption," SAC ¶ 94.  But that's not exactly what the statute says: it prohibits "Failing to protect slaughtered *fresh* meats, fish, fowl or game for human consumption from *dust, flies, and other vermin or substance which may injuriously affect it*." K.S.A. § 65-657(r) (emphasis added).  None of Plaintiff's allegations come remotely close to establishing that the College violated this provision.  Indeed, storing frozen meat in a wrapper or container on the floor of a

freezer, or un-thawing wrapped frozen meat on the floor of a refrigerator, would not violate the law at all. And this provision of the law says nothing about wiling or molding vegetables, or eye wash stations.

Moreover, Plaintiff does not demonstrate that the KFDCA even applies to the College. He claims KFDCA applies to a "nonprofit organization that routinely serves food," and "bakeries where food is provided for the public." *Id.* ¶ 92 (citing K.S.A. § 65-656(v)). But the College is not a "nonprofit organization." It is a *governmental* entity. *Cf. Harewood v. Cloud Cnty. Comm. Coll.*, 2019 WL 2717165, at *3 (D. Kan. 2019). Moreover, the College is not a "bakery" even if the College's "Hospitality Department" provided "weekly sales of baked goods." To the contrary, the College is a higher education institution operated by an independent political board.

In sum, Plaintiff's vague allegations of wrongdoing, and failure to identify specific legal standards that were supposedly violated, doom his claim. *See Diebold*, 2002 WL 1071923, at *4 (plaintiff's allegations that her employer "discovered packages and/or equipment that were or could have been contaminated with anthrax," did not sufficiently plead a predicate violation of OSHA); *see also Palmer v. Pentair*, 2019 WL 3239350, at *8 (D. Kan. 2019) (noting that a plaintiff must plead the violation of "*specific* and *definite* rules, regulations, or laws beyond a mere feeling of wrongdoing," and holding a generic reference to Kansas' occupational health and safety regulations was insufficient to state a claim); *Ross v. Pentair Flow Technologies, Inc.*, 2020 WL 1028304, at *11 (D. Kan. 2020) (plaintiff's allegation that defendant engaged in "safety rule" violations insufficient to establish a violation of Kansas occupational health and safety statute).

Because Plaintiff fails to plead facts that make it at least plausible a reasonably prudent person would have found the College to be in violation of the underlying laws and regulations he references, he fails to plead a viable retaliatory discharge claim under Kansas law.

**B.**    **Plaintiff Fails To State A Claim For Retaliatory Discharge Because There Are Adequate, Alternative Remedies.**

Plaintiff's Count I also fails because there are adequate statutory remedies that exist that substitute for any common law claim.

Under Kansas law, a claim for retaliatory discharge "is suspended if there is a state or federal statute which provides an adequate alternative remedy." *Seifert v. Unified Gov't of Wyandotte Cnty./Kansas City*, 779 F.3d 1141, 1160-61 (10th Cir. 2015). This doctrine specifically "extends to plaintiffs seeking to assert a common law cause of action for retaliation when they have a federal statutory right." *See Tanksley v. Rice County Sheriff's Office*, 2021 WL 1210280, at *19 (D. Kan. 2021). It is not necessary that the plaintiff actually *prevail* on the alternative remedy for the retaliatory discharge claim to be barred. *See Merkel v. Leavenworth County Emergency Medical Servs.*, 2000 WL 127266, at *12-13 (D. Kan. 2000) (finding common law retaliatory discharge claim precluded by adequate alternative remedy of 42 U.S.C. § 1983 even though the federal claim failed on the merits); *Quinn v. City of Bel Aire*, 2007 WL 628186, at *14 (D. Kan. 2007) ("[T]he court finds that an adequate remedy for the complained-of-conduct exists in Quinn's First Amendment claim, whether or not that claim actually succeeds on the merits.")

Here, in Count II, Plaintiff asserts a First Amendment retaliation claim under 42 U.S.C. § 1983, in which he incorporates the same factual allegations supporting Count I, and claims he was retaliated against for his allegedly protected speech in pointing out the alleged violations by the College of various statutes and regulations. *See* SAC ¶¶ 102-114. This Court has held that the availability of a First Amendment retaliation claim precludes a retaliatory discharge claim. *See, e.g.*, *Markel*, 2000 WL 127266, at *12; *see also Tanksley v. Rice County Sheriff's Office*, 2021 WL 1210280, at *19 (D. Kan. 2021); *Bunker v. City of Olathe*, 2001 WL 230364, at *3 (D. Kan. 2001). While Plaintiff does not allege Count II against the College, that does not negate the fact

that such a remedy exists and could have been pleaded.   Moreover, the availability of such a claim against individual supervisors is sufficient to defeat the retaliatory discharge claim against the College itself. *Tanksley*, 2021 WL 1210280, at *18-20 (First Amendment retaliation claim against sheriff foreclosed common law retaliatory discharge claim based on the same facts against the Rice County Sheriff's Office).

Additionally, in Count III, Plaintiff attempts to assert a retaliation claim under the federal FSMA.  While that claim fails because Plaintiff did not exhaust a required administrative remedy and fails to plead facts supporting the causation element, *see infra* at 13, a claim under that federal statute is theoretically available, at least with respect to retaliation arising from alleged violations of federal food safety regulations.  Because it is not necessary that Plaintiff actually prevail on the alternative claim for it to bar the Kansas common law claim, *see Merkel*, 2000 WL 127266, at *12-13, the FSMA serves as an alternative, adequate remedy as well.[7]

### C.    Plaintiff Fails To Plead Facts Supporting The Existence of Causation.

Finally, Plaintiff's claim for common law wrongful discharge fails because he does not plead facts supporting causation—namely, that the College terminated his employment "in retaliation for," the whistleblowing. *Brown*, 752 P.2d at 690.

Here, Plaintiff's SAC is devoid of any allegations directly supporting an inference of retaliatory causation.  He does not allege that any person made any statement, or created any document, indicating his termination was in retaliation for whistleblowing.  Nor does he claim that he was treated differently than a similarly situated person in a way that could only be explained by

---

[7]  It is not clear that Plaintiff attempts to predicate his Kansas common law claim on whistleblowing relating to sex discrimination.  But if so, then Title IX itself, together with Title VII, and the Kansas Act Against Discrimination, are all, adequate alternative remedies that preclude a common law claim predicated on such whistleblowing. *See, e.g.*, *Scott v. Combined Ins. Co. of Am.*, 2005 WL 2540305, at *3 (D. Kan. 2011).

retaliation. And here, he was terminated by the College's Board based on the results of an outside investigation into his *own misconduct*—not by any of the administrators to whom he made earlier complaints. Thus, Plaintiff's causation theory amounts to the two-part syllogism: (1) I made various complaints to various administrators; and (2) at some point later, I was fired by the Board for an asserted non-retaliatory reason. This is clearly inadequate to state a viable retaliation claim.

To be sure, very close temporal proximity between protected activity and termination can give rise to an inference of retaliatory intent. But very close temporal proximity means likely no more than six weeks. *See Meiners v. Univ. of Kan.*, 359 F.3d 1222, 1231 (10th Cir. 2004). Here, Plaintiff's SAC identifies several complaints that he made *a year or more* before his termination, such as his 2018 and 2019 complaints of alleged FERPA violations, *see* SAC ¶¶ 72, 75; his Fall 2020 complaint about Mik Milster's alleged sexual comments, *id.* ¶ 83; and his 2018 reporting of meat "improperly stored above vegetables," *id.* ¶ 89. For several of his other alleged complaints, Plaintiff fails to identify *when* he made them. It appears the only complaints Plaintiff identifies as even being made the same year of his termination were February 2021 reports about moldy food and wilting basil, which he claims he made seven months before his termination. And even those are far too distant to state a viable claim. *Proctor v. United Parcel Serv.*, 502 F.3d 1200, 1208 (10th Cir. 2007) (four months is "too large a time gap to establish a causal connection"). Thus, Plaintiff fails to plead facts supporting the necessarily retaliatory causation element.

## III.    PLAINTIFF FAILS TO STATE A CLAIM FOR RETALIATION UNDER THE FOOD SAFETY MODERNIZATION ACT

Plaintiff's claim in Count III for retaliation under the FSMA fails because a plaintiff bringing a retaliation claim under this statute must first administratively exhaust such a claim by filing a charge of discrimination with the Secretary of Labor, and Plaintiff does not allege that he did so. *See* 21 U.S.C. § 399d(b)(1). Indeed, the statute states, in pertinent part:

> If the Secretary has not issued a final decision within 210 days after the filing of the complaint, or within 90 days after receiving a written determination, the complainant may bring an action at law or equity for de novo review in the appropriate district court of the United States with jurisdiction . . . .

21 U.S.C. § 399d(b)(4).

While it appears a court has yet to interpret the effect of his language in the specific context of a claim under the FSMA, the language in § 399d(b)(4) is identical to that used in other federal statutes, such as the Consumer Product Safety Act, 15 U.S.C. § 2087(b)) and the Fair Labor Standards Act, 29 U.S.C. § 218c(b)(1)). Courts construing the identical language in claims involving these other laws have held that failure to exhaust as required by the statute is "a ground to dismiss a case for failure to state a claim." *See Wilson v. E.I. Dupont De Nemours and Co.*, 2017 WL 960395, at *3 (D. Del. 2017) (dismissing claims under non-discrimination/anti-retaliation provisions of the CPSA and FLSA where complaint failed to plead any facts indicating claim was administratively exhausted); *Jallali v. USA Funds*, 2012 WL 3291873, at *5 (S.D. Fla. 2012) (dismissing retaliatory discharge claim brought under identical statutory language under the FLSA because plaintiff failed to plead administrative exhaustion). This Court should do likewise.

Additionally, a plaintiff asserting a retaliation claim under the FSMA must, like other retaliation claims, plead facts demonstrating that he experienced the alleged adverse action (here, termination) "because" the plaintiff complained of conduct the plaintiff "reasonably believed" to be a violation of the Act itself. *See* 21 U.S.C. § 399d. Here, Plaintiff fails to demonstrate that the FSMA applies to the College. He cites 21 U.S.C. § 342(a)(3) for the notion that food is considered "adulterated" if it contains a "filthy, putrid, or decomposed substance." But that's just a definition. To be sure, the FSMA does prohibit "the introduction or delivery for introduction into interstate commerce . . . of any food . . . that is adulterated," *see* 21 U.S.C. § 331(a), but using allegedly spoiled food in an educational program at a local community college is not "introducing" or

"delivering" food into "interstate commerce." Moreover, the FSMA imposes penalties on a "person" who violates, the Act, *see* 21 U.S.C. § 333(a), and it defines a "person" to include an "individual, partnership, corporation, and association", *see* 21 U.S.C. § 321, but *not* a governmental entity, like the College. So, the food quality concerns Plaintiff allegedly expressed could not have been "reasonably believed" to be a violation of the FSMA.

Additionally, Plaintiff fails to plead any facts giving rise to an inference his termination—the alleged retaliatory act—was *because* he raised concerns of conduct violating the FSMA. Indeed, Plaintiff simply alleges that he complained about food quality, and thereafter was terminated. Moreover, the last date Plaintiff pleads that he raised a food quality concern was February 23, 2021, when he claims he complained of "wilting" basil to Dr. Cox and Mr. Marcellus. But his termination did not come until seven months later. Thus, there is no inference of causation by way of temporal proximity. *See Proctor*, 502 F.3d at 1208.

## IV.   PLAINTIFF FAILS TO STATE A CLAIM FOR RETALIATION IN VIOLATION OF TITLE IX

To state a viable Title IX retaliation claim, a plaintiff must plead facts, as opposed to legal conclusions, demonstrating that he complained of sex discrimination and that he was retaliated against "*because* he complained of sex discrimination." *Cavalier v. Catholic Univ. of Am.*, 306 F. Supp. 3d 9, 36 (D.D.C. 2018) (cleaned up) (emphasis added). It is not enough simply to allege that the plaintiff complained of sex discrimination and at some point thereafter experienced an adverse action that the plaintiff subjectively *believes* was retaliatory in nature. Rather, the plaintiff must plead actual facts giving rise to an inference of causation. *Id.* (discussing the necessity of pleading causation). This necessitates pleading some facts that would "justify an inference of retaliatory motive, such as protected conduct closely followed by adverse action." *Murdock v. City of Wichita*, 2012 WL 4210471, at *11 (D. Kan. 2012).

14

Here, Plaintiff claims he reported Mik Milster's alleged sexual comments about a student in the Fall of 2020. *See* SAC ¶ 83. But this was a year before his termination in September 2021, and thus cannot give rise to an inference of retaliation. *See Proctor*, 502 F.3d at 1208. Plaintiff does not plead any facts regarding when he supposedly complained about Ms. Riley being underpaid, and no facts as to when the Director of Human Resources indicated she considered Plaintiff a "Title IX whistleblower." Thus, the proposed SAC fails to plead any facts giving rise to an inference of causation through "very close" temporal proximity.

Given that Plaintiff has not pleaded "very close" temporal proximity, he must plead "additional evidence to establish causation." *Murdock*, 2012 WL 4210471, at *10. But the proposed SAC is devoid of any other allegations that might even arguably plead a causal connection between Plaintiff's alleged reports of sex discrimination and his termination. He does not allege that anyone told him his termination was due to his prior complaints. He does not allege that any of the documentation of his termination (such as his supervisor's recommendations to the Board) referenced sex discrimination. And he does not allege that the termination letter he received referenced sex discrimination or his reports about it.

At bottom then, the Title IX retaliation claim rests on the same, flawed two-part syllogism: (1) I complained of sex discrimination; and (2) sometime later, I was fired. This does not state a Title IX retaliation claim that is plausible on its face. *See Wooten v. Dep't of Treasury*, 149 F.3d 1192 (Table), at *6 (10th Cir. 1998) ("The mere existence of subsequent adverse employment actions is not enough to make appellant's prima facie case [of retaliation]. He must draw a causal connection between the [protected] activity and the adverse action against him.").

For these, reasons, Plaintiff fails to state a viable Title IX claim.

## CONCLUSION

This Court should dismiss all claims against the College pursuant to Rule 12(b)(6).

Date:   July 3, 2024

Respectfully submitted,

/s/ Derek T. Teeter

| | |
|---|---|
| DEREK T. TEETER | KS BAR NO. 23242 |
| MICHAEL T. RAUPP | KS BAR NO. 25831 |

HUSCH BLACKWELL LLP
4801 Main, Suite 1000
Kansas City, Missouri 64112
(816) 983-8000
(816) 983-8080 (FAX)
derek.teeter@huschblackwell.com
michael.raupp@huschblackwell.com

***Attorneys for Defendant JCCC***

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on July 3, 2024, I filed the foregoing document via the Court's ECF system, which will cause a true and correct copy of the same to be served electronically on all ECF-registered counsel of record.

/s/ Derek T. Teeter
***Attorney for Defendant JCCC***