IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| AARON PRATER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | )  Case No.  2:23-cv-02572-EFM-TJJ |
| JOHNSON COUNTY COMMUNITY | ) |
| COLLEGE, LEROY COX, JERRY | ) |
| MARCELLUS, LARRY MCCLOUD and | ) |
| LESS CROSS, | |
| | |
| Defendants. | |

**BRIEF IN SUPPORT OF DEFENDANT JERRY MARCELLUS'S
MOTION TO DISMISS COUNT II OF THE SECOND AMENDED COMPLAINT**

Respectfully submitted,

**CONSTANGY, BROOKS, SMITH & PROPHETE, LLP**

*/s/* John F. Doyle
John F. Doyle   KS Bar No. 26650
1201 Walnut Street, Suite 2350
Kansas City, Missouri 64106
Telephone: (816) 472-6400
Facsimile: (816) 472-6401
jfdoyle@constangy.com

Attorney for Defendant Jerry Marcellus

1

**TABLE OF CONTENTS**

SPECIFIC RELIEF SOUGHT.................................................................................................... 1

NATURE OF THE MATTER BEFORE THE COURT ............................................................. 1

STATEMENT OF FACTS ......................................................................................................... 2

ARGUMENT............................................................................................................................... 3

   I.   Prater's First Amendment retaliation claim against Marcellus should be dismissed because Prater's allegations fail to state a plausible claim. .................................................................... 4

     A.   Prater's purported speech was made pursuant to his official duties and is therefore not protected. ........................................................................................................................... 5

     B.   Prater's purported speech was not on a matter of public concern and is therefore not protected. ........................................................................................................................... 7

     C.   Prater has not alleged Marcellus caused him to suffer an adverse employment action. ... 8

   II.   Prater's First Amendment retaliation claim against Marcellus should be dismissed because Marcellus is entitled to qualified immunity. .......................................................................... 10

CONCLUSION......................................................................................................................... 11

## SPECIFIC RELIEF SOUGHT

Defendant Jerry Marcellus seeks dismissal of Plaintiff Aaron Prater's claim for alleged First Amendment retaliatory discharge under 42 U.S.C. § 1983 (Count II) for failure to state a claim.

## NATURE OF THE MATTER BEFORE THE COURT

Johnson County Community College ("JCCC") employed both Prater and Marcellus as culinary arts instructors in its Hospitality Department for many years. In Spring 2021, Marcellus and another JCCC employee filed internal complaints about Prater and, following an impartial investigation into the complaints, JCCC terminated Prater's employment.

Prater now asserts three claims against five defendants related to his discharge, including one claim against Marcellus for alleged First Amendment retaliatory discharge under 42 U.S.C. § 1983. *See* Doc. 48, ¶¶ 102-114. While Prater asserts 21 pages of verbosely pleaded allegations, only a handful concern Marcellus, specifically, as opposed to JCCC or the other individually named defendants. And, of those directed at Marcellus, few are pleaded with adequate specificity, and none give rise to a viable claim against Marcellus individually.

Prater alleges Marcellus retaliated against him for participating in constitutionally protected speech, but Prater hardly specifies the speech that was allegedly protected, when/how the speech was allegedly communicated to Marcellus, or when/how Marcellus allegedly retaliated against him. In short, Prater's scant allegations about Marcellus, even taken as true: (1) fall well short of establishing the basic elements of a First Amendment retaliation claim, and (2) fail to overcome Marcellus's presumption of qualified immunity. Accordingly, Prater's claim against Marcellus should be dismissed.

**STATEMENT OF FACTS**

Prater and Marcellus both worked as full-time culinary arts instructors in JCCC's Hospitality Department. Doc. 48 (SAC), ¶¶ 15-17, 24. In around Spring 2020, JCCC elevated Marcellus to be the Interim Director of the Hospitality Department. *Id.*, ¶ 24. In March 2021, Marcellus and another Hospitality Department employee – Bridget McNabb – filed complaints about Prater with JCCC's Human Resources Department. *Id.*, ¶ 34. McNabb was the Purchasing Coordinator responsible for ordering food for JCCC's Hospitality Department. *Id.*, ¶ 26.

JCCC hired an outside investigator to investigate Marcellus's and McNabb's respective complaints about Prater. *Id.*, ¶ 40. The investigator interviewed several faculty members and issued a written report in July 2021. *Id.*, ¶¶ 40-43. Per the report, "the investigation yielded credible information establishing by a preponderance of the evidence that Prater's conduct and interactions with Marcellus and McNabb fell below the expectations of professionalism, courtesy, dignity and respect as set forth in [Prater's job description]." *Id.*, ¶ 46. JCCC's Director of Human Resources, Colleen Chandler, placed Prater on administrative leave in July 2021. *Id.*, ¶¶ 37, 68.

On September 7, 2021, JCCC's Chief Academic Officer, Dr. Larry McCloud, told Prater he intended to recommend to JCCC's Board of Trustees that Prater's employment contract be terminated. *Id.*, ¶¶ 27, 69. On September 17, 2021, the Chairman of JCCC's Board of Trustees, Greg Musil, informed Prater the Board had voted to terminate Prater's contract. *Id.*, ¶ 70. Prater ***does not allege*** Marcellus had any specific role in his termination.

Years before his termination, Prater claims he alerted Cox of two violations of the Family and Educational Rights and Privacy Act ("FERPA") by then-Director of Hospitality, Mik Milster. *Id.*, ¶¶ 72-75. Prater ***does not allege*** these complaints were made about Marcellus, to Marcellus, or even that Marcellus was aware of them.

2

Prater also alleges, in an unspecified time, he "reported instances of sex discrimination and sex harassment of women" to Lee Cross, Cox, and McCloud. *Id.*, ¶¶ 82-85. Again, Prater **does not allege** these complaints were made about Marcellus, to Marcellus, or even that Marcellus was aware of them.

Finally, Prater claims he reported "mishandling of food, purchasing practices of food and similar instances," that he contends violated various laws and regulations governing food safety. *Id.*, ¶ 86. Prater purports to describe his alleged food safety complaints in five paragraphs of his SAC (*see* ¶¶ 87-91), and only two involve Marcellus as opposed to the other named defendants. Prater claims to have emailed Marcellus on February 23, 2021 to report that certain food was unusable and had "obvious molding," and Prater claims to have emailed Marcellus again that same day to report that basil provided to Prater's class "was wilting and turning slimy." *Id.*, ¶¶ 91-92.

Because this purported speech – Prater allegedly complaining to Marcellus about "obvious molding" on certain food or basil that "was wilting and turning slimy" – is the only alleged speech even remotely implicating Marcellus, Marcellus assumes it serves as the basis for Prater's claim against him. As discussed fully herein, Prater's claim against Marcellus fails as a matter of law.

## ARGUMENT

Under Rule 12(b)(6), a court should dismiss a complaint that fails to state a claim upon which relief can be granted. To survive a Rule 12(b)(6) motion, a "complaint must contain enough allegations of fact to state a claim to relief that is plausible on its face." *Jones v. Core Civic Corp.*, 2018 WL 5112272, at *2 (D. Kan. 2018). While all "well-pleaded facts and reasonable inferences derived from those facts are viewed in the light most favorable to the plaintiff," "[c]onclusory allegations . . . have no bearing upon the court's consideration." *Id.* (internal citations omitted).

Relevant here, the Tenth Circuit has stressed the need for careful attention to particulars in § 1983 claims, especially in lawsuits involving multiple defendants. *See Pahls v. Thomas*, 718 F.3d

3

1210, 1225 (10th Cir. 2013). In such cases, "it is particularly important" that a plaintiff "make clear exactly *who* is alleged to have done *what* to *whom*, as distinguished from collective allegations." *Id*. (emphasis in original); *see also Kansas Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1215 (10th Cir. 2011) ("The *Twombly* standard may have greater bite in the context of a § 1983 claim against individual government actors, because they typically include complex claims against multiple defendants."). As a result, a plaintiff must identify specific actions taken by a particular defendant to plead a viable § 1983 claim. *Pahls*, 718 F.3d at 1225.

Under this standard, Prater's claim against Marcellus should be dismissed because Prater's allegations do not state a plausible claim of First Amendment retaliation against Marcellus and, in any event, Marcellus is qualifiedly immune from Prater's claim.

      I.      **Prater's First Amendment retaliation claim against Marcellus should be dismissed because Prater's allegations fail to state a plausible claim.**

The Tenth Circuit directs district courts to evaluate First Amendment retaliation claims using the five-factor *Garcetti/Pickering* test:

    (1)    whether the speech was made pursuant to an employee's official duties;

    (2)    whether the speech was on a matter of public concern;

    (3)    whether the government's interests, as employer, in promoting the efficiency of the public service are sufficient to outweigh the plaintiff's free speech interests;

    (4)    whether the protected speech was a motivating factor in the adverse employment action; and

    (5)    whether the defendant would have reached the same employment decision in the absence of the protected conduct.

*Helget v. City of Hays, Kansas*, 844 F.3d 1216, 1221–22 (10th Cir. 2017) (quoting *Trant v. Oklahoma*, 754 F.3d 1158, 1165 (10th Cir. 2014)). A plaintiff must show all five elements to prevail. *Duda v. Elder*, 7 F.4th 899, 911 (10th Cir. 2021).

Here, Prater's allegations about Marcellus fail under the ***first***, ***second***, or ***fourth*** elements of the *Garcetti*/*Pickering* test, and his claim fails for any of these independent reasons.

### A. Prater's purported speech was made pursuant to his official duties and is therefore not protected.

The Tenth Circuit has "taken a broad view of the meaning of speech that is pursuant to an employee's official duties." *Chavez-Rodriguez v. City of Santa Fe*, 596 F.3d 708, 713 (10th Cir. 2010) (quotations omitted). "The critical question under *Garcetti* is whether the speech at issue is itself ordinarily within the scope of an employee's duties, not whether it merely concerns those duties." *Knopf v. Williams*, 884 F.3d 939, 945 (10th Cir. 2018). If the speech involves "the type of activities that the employee was paid to do," then it falls within the scope of an employee's duties. *Id.* Thus, "the ultimate question is whether the employee speaks as a citizen or instead as a government employee – an individual acting in his or her professional capacity." *Brammer-Hoelter v. Twin Peaks Charter Acad.*, 492 F.3d 1192, 1203 (10th Cir. 2007).

Here, Prater's purported complaints to Marcellus about food purchasing arose within the scope of his official duties as a culinary arts instructor. Again, the few allegations related to Marcellus are as follows:

- Prater allegedly sent an email in February 2021 to Cox "begging [Cox] to address problems in purchasing." Doc. 48, ¶ 53. In response, Cox allegedly encouraged Prater to take his purchasing concerns to Marcellus. *Id.*

- Prater claims to have emailed Marcellus on February 23, 2021 to report that certain food was unusable and had "obvious molding." *Id.*, ¶ 90.

- Finally, Prater claims to have emailed Marcellus and Cox on February 23, 2021 to report that basil provided to Prater's class "was wilting and turning slimy." *Id.*, ¶ 91.

5

These allegations reflect nothing more than Prater having complained to members of his management chain about run-of-the-mill operational issues, which is not constitutionally protected speech. To be sure, Prater was a culinary arts instructor in JCCC's Hospitality Department, which was within the larger Business Division. *Id.*, ¶ 18. Cox was the Dean of the Business Division, and Prater admits Cox provided Prater his performance review. *Id.*, ¶ 21. And Marcellus was the Interim Director of the Hospitality Department as of Spring 2020. *Id.*, ¶ 24. Thus, Prater's purported complaints to Marcellus and Cox about moldy and/or slimy food reflects speech between Prater and two members of his supervisory chain.

The Tenth Circuit and its district courts have found supervisor-employee speech of this kind to be unprotected. *See, e.g.*, *Rohrbough v. Univ. of Colorado Hosp. Auth.*, 596 F.3d 741, 747 (10th Cir. 2010) (observing, "speech directed at an individual or entity within an employee's chain of command is often found to be pursuant to that employee's official duties under *Garcetti/Pickering*"); *Cid v. Bd. of Cnty. Commissioners of Riley Cnty., Kansas*, No. 18-4012-DDC-KGS, 2019 WL 161495, at *7 (D. Kan. Jan. 9, 2019) (granting the defendant's motion to dismissing, stating, "Our Circuit has found similar kinds of complaints – directed to supervisors – is speech made pursuant to an employee's official duties, and thus not entitled to First Amendment protection."); *Akins v. Fulton Cnty., Ga.*, 278 F. App'x 964, 970 (11th Cir. 2008) (reports of purchasing and bid irregularities made up the plaintiff's chain of command were pursuant to official duties). Thus, Prater's claim can be dismissed on this basis without further analysis.

The content of Prater's purported speech even further supports dismissal. Prater claims he complained to Marcellus and Cox about moldy and/or slimy food – but this would have been related to, if not squarely within, his responsibilities as a culinary arts instructor. Even if Prater claims he went above and beyond his regular duties by scrutinizing the department's food supplies, this would

6

be irrelevant, as "the ultimate question is whether the employee speaks as a citizen or instead as a government employee." *Brammer-Hoelter*, 492 F.3d 1203. Regardless of whether Prater acted within the scope of any formal job description when raising concerns about moldy and/or slimy food, his interest in the Hospitality Department's food quality arose solely from his role as a culinary arts instructor. Accordingly, Prater's cannot establish the first element of the *Garcetti/Pickering* test and his claim can therefore be dismissed.

### B. Prater's purported speech was not on a matter of public concern and is therefore not protected.

Speech is a matter of public concern "when it can be fairly considered as relating to any matter of political, social, or other concern to the community, or when it is a subject of legitimate news interest; that is, a subject of general interest and of value and concern to the public." *Lane v. Franks*, 573 U.S. 228, 241 (2014). To satisfy this requirement, a plaintiff must allege facts capable of supporting a finding that his speech "involve[d] a matter of public concern and not merely a personal issue internal to the workplace." *Moore v. City of Wynnewood*, 57 F.3d 924, 931 (10th Cir. 1995). Consequently, speech that simply airs "grievances of a purely personal nature" typically does not involve matters of public concern. *Brammer-Hoelter*, 492 F.3d at 1205.

Prater cannot show his purported speech – complaining to Marcellus and Cox about moldy and/or slimy food – is a matter of public concern. According to Prater's SAC, these purported complaints were made via email to Marcellus and Cox. Doc. 48, ¶¶ 90-91. This type of private speech between an employee and an employer is inherently incapable of being a matter of public concern. *See, e.g.*, *Cid*, 2019 WL 161495, at *8 ("[P]laintiff made his complaints about a mandatory quota system in the private setting of an employee-employer dispute after his supervisors had criticized his performance based on his failure to meet arrest quotas. Thus, [] plaintiff's speech is more appropriately characterized as private and thus receives no First Amendment protection.") (citation

7

omitted). Accordingly, Prater cannot satisfy the second element of the *Garcetti/Pickering* test, and his claim warrants dismissal on this basis as well.

    **C. Prater has not alleged Marcellus caused him to suffer an adverse employment action.**

The fourth element of the *Garcetti/Pickering* test requires that "the protected speech [be] a motivating factor in the adverse employment action." *Dixon v. Kirkpatrick*, 553 F.3d 1294, 1302 (10th Cir. 2009). Thus, "this element implicitly requires that the [defendant] take some adverse employment action against the employee." *Lincoln v. Maketa*, 880 F.3d 533, 539–40 (10th Cir. 2018) (cleaned up). An adverse employment action is one that would deter a reasonable person from exercising his First Amendment rights. *Couch v. Bd. of Trustees of Mem'l Hosp. of Carbon Cnty.*, 587 F.3d 1223, 1238 (10th Cir. 2009).

Here, while unclear from Prater's SAC, it seems the crux of Prater's claim against Marcellus (as opposed to JCCC or the other individually named defendants), is that, according to Prater, Marcellus allegedly submitted an internal human resources complaint about Prater in retaliation for Prater's alleged food purchasing complaints. Even taken as true, Prater has not alleged an actionable adverse action by Marcellus.

As an initial matter, to the extent Prater relies on Marcellus's complaint itself as purportedly being an adverse employment action, Prater's claim is time barred. Prater alleges Marcellus complained to human resources about him on March 16, 2021 (Doc. 48, ¶ 34), and Prater did not file his state court petition until September 14, 2023. *See* Doc. 1-1. Thus, Prater filed his petition nearly two and one-half years after Marcellus submitted his internal complaint, which is beyond the two-year limitations period for his claim. *See Bledsoe v. Jefferson Cnty., Kansas*, 275 F. Supp. 3d 1240, 1256 (D. Kan. 2017) (recognizing a two-year limitations period for § 1983 claims, which accrue

"when facts that would support a cause of action are or should be apparent"). Prater's claim therefore fails outright if based on Marcellus's internal complaint.

Even if not time barred, Marcellus's complaint about Prater is not an adverse employment action as a matter of law. *See, e.g.*, *Couch*, 587 F.3d at 1239 (subjecting an employee to a workplace investigation is not an adverse action); *Lincoln*, 880 F.3d at 542 (finding allegations of an internal investigation, being placed on administrative leave, and humiliation courts failed to state an adverse action). Thus, to the extent Prater's claim is based on Marcellus's internal complaint against him, it fails on this basis as well.

Nor can Prater state a claim against Marcellus based on his eventual termination because Prater alleges no facts suggesting Marcellus had any role in his termination. In fact, Prater does quite the opposite: Prater alleges JCCC hired an outside investigator to investigate Marcellus's and another employee's complaints about Prater, the investigator interviewed several witnesses before concluding Prater had behaved inappropriately, JCCC's Chief Academic Officer recommended to JCCC's Board of Trustees that Prater be terminated, and the Board ultimately voted to terminate Prater's employment. Doc. 48, ¶¶ 34, 40-43, 46, 69, 70. Prater does not allege Marcellus recommended his discharge or otherwise played a role in causing it other than being one of two employees who submitted an internal complaint about Prater. Without more, this is insufficient to state a claim against Marcellus. *See, e.g.*, *Salazar v. City of Com. City*, 535 F. App'x 692, 703 (10th Cir. 2013) (affirming dismissal of § 1983 claim against individual defendant who was neither the decision maker in the plaintiff's discharge nor even recommended the plaintiff's discharge). Accordingly, Prater cannot satisfy the fourth element of the *Garcetti/Pickering* test, and his claim should be dismissed on this basis as well.

II.     **Prater's First Amendment retaliation claim against Marcellus should be dismissed because Marcellus is entitled to qualified immunity.**

Qualified immunity is intended to protect public servants – "all but the plainly incompetent or those who knowingly violate the law" – from the burdens of lawsuits. *Lewis v. Tripp*, 604 F.3d 1221, 1225 (10th Cir. 2010). A court should endeavor to resolve an assertion of qualified immunity at the earliest possible stage in litigation. *Pearson v. Callahan*, 555 U.S. 223, 232 (2009). Consequently, "district courts may grant motions to dismiss on the basis of qualified immunity." *Myers v. Brewer*, 773 F. App'x 1032, 1036 (10th Cir. 2019).

Once a defendant asserts qualified immunity, it becomes the plaintiff's burden to show: (1) the defendant's actions violate a constitutional right, and (2) the constitutional issue was clearly established at the time of defendant's actions. *Medina v. Cram*, 252 F.3d 1124, 1128 (10th Cir. 2001). To be clearly established, the contours of the right must be sufficiently clear so that the official would know that what he was doing violated the right. *Id*. It is not enough to point to the existence of a right at a high level of generality (e.g. a free-speech right or a due-process right) – the question is whether the specific conduct of the defendant is clearly prohibited. *Martley v. Basehor, Kansas, City of*, 537 F. Supp. 3d 1260, 1267 (D. Kan. 2021) (citing *Ashcroft v. al-Kidd*, 563 U.S. 731, 742, 131 S. Ct. 2074, 179 L.Ed.2d 1149 (2011)). The Tenth Circuit recognizes this as a "heavy burden" for the plaintiff. *Knopf*, 884 F.3d at 944.

Here, as discussed above, Prater's claim against Marcellus suffers from three fatal deficiencies: (1) Prater's purported "speech" was made within his official duties; (2) Prater's purported "speech" was not a matter of public concern; and (3) Marcellus did not cause Prater to suffer an actionable adverse action. Even if the Court deems Prater properly pleaded these elements, however, to overcome qualified immunity, Prater faces the added hurdle of proving Marcellus violated Prater's "clearly established constitutional rights." *See, e.g.*, *Lincoln*, 880 F.3d at 538

10

(recognizing the "gloss of qualified immunity," creates an added burden for plaintiffs extending beyond the *Garcetti/Pickering* elements, and finding qualified immunity on issue of whether speech arose from plaintiff's official duties); *Hoke v. Swender*, 421 F. Supp. 3d 1164, 1172 (D. Kan. 2019) (finding qualified immunity appropriate where the plaintiff could not point to clearly established law supporting claim). For the reasons discussed above and incorporated herein, Prater has failed to plead any facts establishing the basic *Garcetti/Pickering* elements, let alone sufficient facts to satisfy his higher burden of demonstrating Marcellus violated his clearly established constitutional rights. Accordingly, Marcellus is entitled to qualified immunity, and Prater's claim warrants dismissal on this basis as well.

## CONCLUSION

Based on the foregoing, Defendant Jerry Marcellus respectfully requests that the Court grant this motion and dismiss with prejudice Plaintiff Aaron Prater's claim for First Amendment retaliation for failure to state a claim under Fed. R. Civ. P. 12(b)(6).

Respectfully submitted,

**CONSTANGY, BROOKS, SMITH & PROPHETE, LLP**

*/s/* John F. Doyle
John F. Doyle   KS Bar No. 26650
1201 Walnut Street, Suite 2350
Kansas City, Missouri 64106
Telephone: (816) 472-6400
Facsimile: (816) 472-6401
jfdoyle@constangy.com

Attorney for Defendant Jerry Marcellus

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 5th day of July, 2024, a true and correct copy of the foregoing was filed with the Court's ECF filing system, which will send notification of the same to all counsel of record.

*/s/* John F. Doyle
Attorney for Defendant Jerry Marcellus
