### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| **AARON PRATER**, | ) |
| | ) |
| Plaintiff, | ) |
| v. | ) |
| | ) Case No. 23-cv-2572 |
| **JOHNSON COUNTY COMMUNITY** | ) |
| **COLLEGE**, **LEROY COX, JERRY** | ) |
| **MARCELLUS, LARRY MCCLOUD and** | ) |
| **LEE CROSS**, | ) |
| | ) |
| Defendants. | ) |

### OPENING BRIEF IN SUPPORT OF
### DEFENDANT LEE CROSS' MOTION TO DISMISS

COMES NOW Defendant Lee Cross, by and through undersigned counsel, and for his Opening Brief in Support of his Motion to Dismiss, states as follows:

### SPECIFIC RELIEF SOUGHT

Defendant Trustee Lee Cross ("Defendant Cross") in accord, with Dr. Leroy Cox and Dr. Larry "Mickey" McCloud (collectively, the "Individual Defendants"), seeks dismissal of Plaintiff's First Amendment retaliation claim (Count II of Plaintiff's Second Amended Complaint) the sole count against him for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6).

### NATURE OF THE MATTER BEFORE THE COURT

Trustee Lee Cross is a Trustee on the Board of Trustees of Johnson County Community College ("the College").

Plaintiff Aaron Prater is a former faculty member who worked in the Department of Hospitality Management as a culinary instructor at the College. Dr. Cox is Dean, Business and Technology at the College. Dr. McCloud is Executive Vice President/Provost. The Department of Hospitality Management, in turn, falls within Dr. Cox's portfolio as Dean and is subject to

Dr. McCloud's ultimate authority on academic matters.

In the spring of 2021, two of Plaintiff's colleagues filed hostile environment complaints against him with the College's Department of Human Resources. The College engaged an outside investigator, who found that Plaintiff engaged in acts of misconduct, including berating and badgering a non-faculty staff member and instigating angry confrontations with his Department director. Based on the investigation, Dr. McCloud recommended to the College's Board that it terminate Plaintiff's employment. Shortly thereafter, the College's Board notified Plaintiff of his termination for violating numerous College policies and standards, including those requiring employees to be professional, courteous, and to engage in constructive conflict resolution.

Under the Kansas Due Process Act ("KDPA"), K.S.A. § 72-2251 *et seq.*, Plaintiff had the right to challenge the Board's decision through a due process hearing before a neutral hearing officer. Plaintiff initiated a due process review under the KDPA, arguing that the College's evidence did not support *any* of the Board's asserted grounds for termination *and* that the Board's action was taken in retaliation for Plaintiff's having raised various complaints about the College and the Department. The hearing officer concluded the College's decision to terminate Plaintiff's employment was *not* retaliatory and that Plaintiff had indeed failed to engage in constructive conflict resolution. *See In re the Due Process Hearing of Johnson County Community College v. Prater*, 2023 WL 1866808, at *3 (Kan. Dist. Ct. Feb. 09, 2023)[1]. Nonetheless, the hearing officer imposed an alternative punishment of probation and anger management counseling, instead of affirming the termination decision. *Id.* at *3. As discussed in its own Motions to Dismiss (Docs. 10, 11, 51 and 52), the College appealed the hearing officer's decision and obtained a

---

[1] This Court may take judicial notice of state court records from a related proceeding. *See Columbian Fin. Corp. v. Bowman*, 314 F. Supp. 3d 1113, 1119 (D. Kan. 2018), *aff'd,* 768 F. App'x 847 (10th Cir. 2019).

reversal and remand. Plaintiff's termination is pending on remand to the hearing officer.

Despite that the Board was the final decision-maker that voted to terminate Plaintiff's employment, despite that Dr. McCloud's recommendation to the Board was based on an outside investigation, despite that Dr. Cox did not even make a recommendation to the Board, and despite that the independent hearing officer concluded Plaintiff's termination was not retaliatory (a conclusion that is "final"[2]), Plaintiff now asserts First Amendment retaliation claims against Defendant Cross, along with Individual Defendants, claiming they are responsible for his termination and were motivated by retaliatory animus based on vague complaints Plaintiff raised years and months earlier.

Plaintiff's claim against the Defendant Cross fails to state a claim for three, independent reasons: (1) the complaints Plaintiff claims he made were speech pursuant to his official duties and thus unprotected by the First Amendment under *Garcetti v. Ceballos*, 547 U.S. 410 (2006); (2) even if Plaintiff did engage in protected speech, he fails to plead that Defendant caused his termination, and cannot do so, given that there was an outside investigation, the Board made the termination decision, and an independent hearing officer found there was no retaliation; and (3) Plaintiff fails to allege any facts supporting that Defendant Cross took any action out of retaliatory animus. In addition, Defendant Cross is entitled to qualified immunity because (1) they did not violate Plaintiff's constitutional rights; and (2) even if they did, Plaintiff cannot demonstrate that it was clearly established at the time that Defendant's alleged actions were unconstitutional. Thus, this Court should dismiss Count II of Plaintiff's Second Amended Petition, the sole count against Defendant Cross, pursuant to Rule 12(b)(6).

---

[2] *See In re Due Process Hearing*, 2023 WL 1866808, at *2.

## STATEMENT OF FACTS[3]

Plaintiff was a faculty member in the Department of Hospitality. Second Amended Complaint ¶¶ 15 and 16. In March 2021, two colleagues filed complaints about Plaintiff with the College. *Id.* ¶ 34. The College initiated an outside investigation of the two complaints, as well as certain concerns Plaintiff raised regarding retaliation. *Id.* ¶ 37.

The investigator submitted a written report in July 2021. *Id.* ¶ 40. After the investigator completed her report, on July 16, 2021 the College issued a letter placing Plaintiff on paid leave and notifying Plaintiff the investigation concluded he "engaged in conduct and interactions that fall below the expectations of professionalism, courtesy, dignity, and respect." *Id.* ¶ 67.

On August 31, 2021, the College issued a letter notifying Plaintiff that a preponderance of the evidence showed he failed to meet his job expectations, including by "exhibiting hostile behaviors, including yelling at coworkers and speaking to others rudely." *Id.* ¶ 68.

On September 7, 2021, Dr. McCloud sent a letter informing Plaintiff that he was recommending to the College's Board that it terminate Plaintiff's employment. *Id.* ¶ 69. Plaintiff received notice of his potential termination prior to the Board's meeting to consider it. *Id.* ¶ 66, 67.

The Board voted to terminate Plaintiff's employment, and the Board chair provided Plaintiff written notice of such termination through a letter issued in mid-September 2021. *Id.* ¶ 70. After receiving the chair's letter, Plaintiff requested a due process hearing. *Id.* ¶ 71. A due process hearing was held and included testimony from multiple witnesses. *Id.* ¶¶ 44-63.

In November 2018, nearly three years before his termination, Plaintiff "alerted Dean Cox

---

[3] Defendant confines his Statement of Facts to those set forth in the Second Amended Complaint and documents expressly incorporated into or integral to the same. Defendant reserves the right to refute any and all facts at later stages.

of a violation of the Family and Educational Rights and Privacy Act by Director of Hospitality, Mik Milster." *Id*. ¶ 72. In September 2019, two years before his termination, Plaintiff alerted Cox "of a second FERPA violation regarding Mik Milster, Director of Hospitality." *Id*. ¶ 75.

On an unknown date, Plaintiff "also reported instances of sex discrimination and sex harassment of women to Trustee Cross," and "Cox and McCloud as well." *Id*. ¶ 82. Plaintiff alleges that one report he made to Cross and to the Human Resources Office in the fall of 2020 was that Mik Milster had made comments of a sexual nature about female students in the Hospitality program. *Id*. ¶ 83. Plaintiff reported that a college, Michelle Riley had been tasked with work that she was not compensated for yet her male colleagues were compensated for the same work; and after an investigation, the College provided backpay to Riley but allegedly did not acknowledge any sex discrimination. *Id*. ¶ 84. Plaintiff alleges that Colleen Chandler, the College's HR Director, told Plaintiff that she considered him to be a Title XI whistleblower. *Id*. ¶ 85.

Additionally, Plaintiff reported "mishandling of food, purchasing practices of food and similar instances," that Plaintiff alleges violated various state and federal laws and regulations governing food safety, and the Occupational Safety and Health Act. *Id*. ¶ 86. Plaintiff alleges that Defendants, and his Department director, were "aware of those issues." *Id.*

Plaintiff alleges that, on multiple occasions, Plaintiff "reported that food had been improperly stored on the floor and that food in various stages of rot were maintained" and that these reports were made to Cox, McCloud and to Cross. *Id*. ¶ 87.

Plaintiff alleges that, on multiple occasions, that the eye wash station was in a locked room and Milster had taken all the keys to the lock, and that the eye wash station is a critical component of a commercial kitchen because it permits a chef or other kitchen worer to self-treat in the event of toxic exposure, and those undated reports were also made to Cox, McCloud and to Cross. *Id.*

¶ 88. In a February 12, 2018 email, Plaintiff reported to Larry Reynold that meat had been stored above foods like vegetables. *Id*. ¶ 89. In a February 23, 2021 email, Plaintiff reported to Marcellus that food provided to faculty for a class was unusable and had mold, and Marcellus advised Cox of this problem via email on February 23, 2021. *Id*. ¶ 90. In an email to Marcellus and Cox dated February 23, 2021, Plaintiff found that basil provided to him for a class was wilting and turning slimy. *Id*. ¶ 91.

## ARGUMENT AND AUTHORITIES

### I.  STANDARD OF REVIEW

#### A.  Standard For Failure To State A Claim.

Under Rule 12(b)(6), a court should dismiss a complaint that fails to state a claim upon which relief can be granted. To survive a Rule 12(b)(6) motion, a "complaint must contain enough allegations of fact to state a claim to relief that is plausible on its face." *Jones v. Core Civic Corp.*, 2018 WL 5112272, at *2 (D. Kan. 2018). "[C]onclusory allegations . . . have no bearing upon the court's consideration." *Id*. (internal citations omitted).

#### B.  Substantive Elements Of A First Amendment Retaliation Claim

Here, Plaintiff asserts a First Amendment retaliation/wrongful discharge claim against Defendant Cross, who was a Trustee on the Board of Trustees for the College. In *Garcetti*, the Supreme Court recognized "the inherent tension between an employee's right to free speech and the government employer's right to exercise 'a significant degree of control over their employees' words and actions,' and concluded 'while the First Amendment invests public employees with certain rights, it does not empower them to constitutionalize the employee grievance." *Rohrbough v. Univ. of Colo. Hosp. Auth.*, 596 F.3d 741, 745 (10th Cir. 2010) (discussing *Garcetti*).

To balance these competing interests, the Tenth Circuit employs a five-step "*Garcetti/Pickering*" test in cases of alleged First Amendment retaliation brought by an employee:

> (1) whether the speech was made pursuant to an employee's official duties; (2) whether the speech was on a matter of public concern; (3) whether the government's interests, as employer, in promoting the efficiency of the public service are sufficient to outweigh the plaintiff's free speech interests; (4) whether the protected speech was a motivating factor in the adverse employment action; and (5) whether the defendant would have reached the same employment decision in the absence of the protected conduct.

*Id.* (internal citation omitted). "The first three steps of the *Garcetti/Pickering* analysis are issues of law to be resolved by the district court." *Id.* (cleaned up).

## II. PLAINTIFF FAILS TO STATE A CLAIM AGAINST DEFENDANT CROSS FOR FIRST AMENDMENT RETALIATION

### A. Plaintiff Fails To Allege He Engaged In Protected Speech.

Under the first step in the test, if the employee "speaks pursuant to his official duties, then there is no constitutional protection because the restriction on speech simply reflects the exercise of employer control over what the employer itself has commissioned or created." *Brammer-Hoelter v. Twin Peaks Charter Acad.*, 492 F.3d 1192, 1202-03 (10th Cir. 2007).

Of all the circuit courts of appeals, the Tenth Circuit "has taken a broad view of the meaning of speech that is pursuant to an employee's official duties." *Poff v. Oklahoma ex rel. Oklahoma Dep't of Mental Health & Substance Abuse Servs.*, 683 F. App'x 691, 697 (10th Cir. 2017) (internal quotation marks and citations omitted). "[S]peech directed at an individual or entity within an employee's chain of command is often found to be pursuant to that employee's official duties under *Garcetti/Pickering*." *Rohrbough*, 596 F.3d at 747. Demonstrating that an employee's speech in the workplace is *not* pursuant to their official duties is a "heavy barrier." *See Casey v. W. Las Vegas Indep. Sch. Dist.*, 473 F.3d 1323, 1331 (10th Cir. 2007).

*Rohrbough* illustrates the Tenth Circuit's "broad view" of speech pursuant to an employee's official duties. In that case, the plaintiff was a hospital employee who complained to her immediate supervisors, and eventually higher administrators, about various staffing and

performance problems in a heart-transplant unit that she believed were affecting patient care. 596 F.3d at 743. Specifically, the plaintiff raised complaints that: (1) labs and other medical tests were being performed late; (2) charts were not being reviewed in a timely fashion; and (3) the hospital was involved in a possible heart transplant misallocation and covered it up. *Id*. at 743-44.

Like Plaintiff here, the *Rohrbough* plaintiff made her complaints within the employer's chain of command and was later terminated based on her own performance issues. *Id*. at 744. She sued, alleging a First Amendment retaliation claim against the hospital itself, as well as against her manager, who made the decision to terminate. *Id*. at 745. Observing that "speech directed at an individual or entity within an employee's chain is often found to be pursuant to that employee's official duties," and that speech is pursuant to official duties if it "stemmed from and was of the type that the employee was paid to do, regardless of the exact role of the individual or entity to which the employee has chosen to speak," the Tenth Circuit held that the plaintiff's complaints were all pursuant to her official duties and unprotected. *Id*. at 747-48.

The plaintiff argued that her complaints were outside the scope of her official duties because she documented some in official "occurrence reports" that she sent to the hospital's risk management unit, instead of to her *direct* chain of command. *Id*. at 748. But the court rejected her argument, noting the complaints concerned "conditions affecting her ability to fulfill her duties," and "stemmed from and was of the type [of work] she was paid to do." *Id*. (cleaned up). This was true even though submitting occurrence reports was not explicitly required in the plaintiff's job description and was not directed by her supervisors. As the court observed: "employee speech not explicitly required as part of an employee's day-to-day job may nevertheless fall within the scope of that employee's official duties." *Id*. at 749 (cleaned up).

In light of *Rohrbough*, and similar cases, the speech Plaintiff claims he engaged in here

was pursuant to his official duties and, thus, not constitutionally protected. First, Plaintiff claims that, nearly three years and again two years before his termination, he alerted other Defendants (and not Defendant Cross) of alleged violations of FERPA by a colleague in the Department of Hospitality. *See* Second Amended Complaint ¶¶ 72-78. FERPA is a law governing the confidentiality of student records held by colleges. And Plaintiff was a faculty member in the Department of Hospitality. Plaintiff made the complaints as a result of his job: there are no facts to suggest he made the complaints as a private citizen. Indeed, he claims he made these reports up his chain of command to the Dean and, eventually the Director of Enrollment Services, but never to the public or to a third-party. The speech clearly "stemmed from" his job at the College and was not made in his capacity as an employee, and not as a citizen. *See Ellison v. Roosevelt Cnty. Bd. of Comm'rs*, 700 F. App'x 823, 829 (10th Cir. 2017) ("This speech to his supervisor, who surely was within his chain of command, tends to show that Mr. Ellison was indeed speaking pursuant to his official duties.").

Second, Plaintiff claims that, on some unknown date, he "also reported instances of sex discrimination and sex harassment of women to Trustee Cross," and "Cox and McCloud as well." Second Amended Complaint ¶ 82. Plaintiff now alleges that one report he made to Cross and to the Human Resources Office in the fall of 2020 was that Mik Milster had made comments of a sexual nature about female students in the Hospitality program. *Id*. ¶ 83. Plaintiff reported that a college, Michelle Riley had been tasked with work that she was not compensated for yet her male colleagues were compensated for the same work; and after an investigation, the College provided backpay to Riley but allegedly did not acknowledge any sex discrimination. *Id*. ¶ 84. Plaintiff alleges that Colleen Chandler, the College's HR Director, told Plaintiff that she considered him to be a Title XI whistleblower. *Id*. ¶ 85. The Individual Defendants were in Plaintiff's chain of

command. Multiple courts have held that internal reporting of harassment or discrimination is speech pursuant to official duties because employees are generally subject to an employer policy to ensure a discrimination and harassment free workplace and may be subject to a regulatory duty to report. *See, e.g.*, *Rudman v. Okla. Ex rel. Bd. Of Regents*, 2022 WL 17083406, at *19 (W.D. Okla. 2022) (sexual harassment); *Golovan v. Univ. of Del.*, 73 F. Supp. 3d 442, 454 (D. Del. 2014) (faculty report of sexual harassment by faculty colleague was speech pursuant to official duties); *see also Palmerin v. Johnson County*, 2011 WL 778441, at *5 (D. Kan. 20110) (plaintiff's reporting of violations of personnel rules was pursuant to official duties because employer imposed a duty to report). Here, the College had such a policy.[4] Thus, Plaintiff's alleged reporting of sexual harassment and discrimination to the Individual Defendants and Defendant Cross was also pursuant to his official duties.

Third, Plaintiff claims he reported "mishandling of food, purchasing practices of food and similar instances." Second Amended Complaint ¶ 86. These complaints clearly "stemmed from" Plaintiff's employment as a faculty member who taught cooking classes, and, like his other complaints, they were raised internally, through his chain of command. Moreover, the issues Plaintiff was complaining about directly affected his ability to fulfill his duties as a cooking instructor. Indeed, Plaintiff admits as much, giving one example of such a "purchasing practice" as "problems purchasing regarding chicken and vermicelli." *Id.* ¶ 52. Complaints about purchasing practices and workplace safety are made pursuant to an employee's official duties and not protected. *See, e.g., Akins v. Fulton Cnty., Ga.*, 278 F. App'x 964, 970 (11th Cir. 2008) (reports

---

[4] *See* Sexual Harassment Policy 650.000 ("JCCC students and employees are responsible for assuring that JCCC maintains an environment for study and work free from Sexual Harassment or related retaliation . . ."), available at https://www.jccc.edu/about/leadership-governance/policies/safety-and-security/campus-community-safety/sexual-misconduct.html.

of purchasing and bid irregularities raised up the chain of command were pursuant to official duties); *Ross v. New York City Dep't of Educ.*, 935 F. Supp. 2d 508, 519 (E.D.N.Y. 2013) (gym teacher's complaints about dangerous conditions in a gym were pursuant to official duties); *Massaro v. Dep't of Educ. of the City of N.Y.*, 2011 WL 2207556, at *3-4 (S.D.N.Y. 2013) (teacher's complaints about a mite infestation were pursuant to her official duties).

Because all of the speech Plaintiff identifies "owes its existence" to, and stems from, his status as a faculty member, such speech is not protected by the First Amendment and cannot support a First Amendment retaliation claim. *See Garcetti*, 547 U.S. at 411.

### B. Plaintiff Fails To Allege the Defendant Cross Acted Out Of Retaliatory Motive.

Even if Plaintiff had engaged in speech as a citizen, rather as an employee (Step 1), and assuming for now that the speech was on a matter of public concern (Step 2) and the College's interests in promoting efficiency did not outweigh Plaintiff's interest in speaking (Step 3), in Step 4 of the *Garcetti/Pickering* analysis, Plaintiff still must plead facts supporting that Defendant Cross caused him to experience an adverse employment action and that they did so with retaliatory motive. But Plaintiff makes no allegations suggesting Defendant Cross took any action out of retaliatory motive. All Plaintiff alleges is that he raised various complaints to his chain of command prior to his termination and that Defendant Cross "urged" him to express these complaints via email. Plaintiff makes no allegation that such urging was in any way retaliatory, or that Defendant Cross took any other actions that allegedly caused him to experience an adverse employment action. Because Plaintiff has failed to allege that Defendant Cross took any action out of retaliatory motive, Plaintiff fails to state a claim.

### C.  **<u>Plaintiff Fails To Allege That Defendant Cross Caused Him To Suffer Termination.</u>**

As a second component of Step 4 of the *Garcetti/Pickering* analysis, Plaintiff must plead facts to show Defendant Cross caused him to suffer an adverse employment action. The adverse employment action he claims they caused him to suffer is termination, as Plaintiff styles Count II a claim for "retaliatory discharge." Second Amended Complaint at Count II. But Plaintiff does not allege that Defendant Cross made the decision to terminate Plaintiff's employment, nor that Plaintiff memorializing his prior complaints in an email to Cross caused his termination, nor that Cross was involved in his termination decision or vote in any way. Moreover, the Board's decision was subject to an independent statutory review that found there was no retaliation. Therefore, there is no causal chain between Defendant Cross' alleged actions and Plaintiff's termination.

As it pertains to Defendant Cross, there are no allegations to suggest he played any role in the proximate events that led up to Plaintiff's termination. Defendant Cross did not make the complaint against Plaintiff that was referred for an outside investigation Defendant Cross did not conduct the outside investigation and did not issue the investigation report that concluded Plaintiff violated numerous College standards. Defendant Cross did not issue the recommendation to the Board that Plaintiff's employment be terminated. The Board, as a whole, was the final College decision-maker. At most, the Second Amended Complaint alleges that Plaintiff's complaints were reported to Defendant Cross. Plaintiff makes no further allegations regarding any actions taken by Defendant Cross or involvement by Defendant Cross.

The Board, as a body politic under Kansas law, *see* Kan. Stat. Ann. §§ 71-201 and 71-1403, made its own determination to terminate Plaintiff's employment. Moreover, the Board's decision was subject to review under the KDPA before an *independent* hearing officer. Plaintiff exercised his right to a hearing, and the hearing officer concluded Plaintiff was *not* retaliated

against and that the evidence did support that Plaintiff failed to engage in constructive conflict resolution with his colleagues. *See In re Due Process Hearing*, 2023 WL 1866808, at *2 & 4.

For the purposes of causation, the Tenth Circuit has held that the causal chain can even be broken by an *independent review* that takes place after the adverse action causal chain can even be broken by an *independent review* that takes place after the adverse action. *See Singh v. Cordle*, 936 F.3d 1022, 1038 (10th Cir. 2019) ("The causal chain can even be broken by an *independent review* that takes place after the adverse action.") (emphasis added); *Thomas v. Berry Plastics Corp.*, 803 F.3d 510, 517 (10th Cir. 2015 (same).[5]

In short, Plaintiff fails to plead facts establishing that Defendant Cross, as an individual, caused him to be terminated. Thus, his claim fails for this reason too.

### III. DEFENDANT CROSS IS ENTITLED TO QUALIFIED IMMUNITY

Even if Plaintiff has pleaded sufficient facts to state a claim for First Amendment retaliation under the default Rule 12(b)(6) standard, the Defendant Cross is nevertheless protected by qualified immunity because it was not clearly established that (1) Plaintiff's speech was protected (2) that Defendant could be liable for First Amendment retaliation when the governing board of a body politic was the final decision-maker and the Board's decision was further subject to post-termination review by an independent hearing officer, who concluded there was no retaliation; or that (3) the unlawfulness of any actions by Defendant Cross were clearly established at the time they occurred.

State actors sued in their individual capacities enjoy qualified immunity unless a plaintiff

---

[5] True, the KDPA process has not (yet) affirmed Plaintiff's termination, but it did result in a decision that Plaintiff was not retaliated against and that he failed to engage in constructive conflict resolution. Because Plaintiff failed to timely appeal those determinations, they are "final" and not subject to further review. *See In re Due Process Hearing*, 2023 WL 1866808, at *2 & 4. Thus, it serves to break any causal chain that would tie his termination to alleged retaliatory animus of supervisors.

demonstrates both (1) that their constitutional rights were violated and (2) that the unlawfulness of the conduct was "clearly established" at the time. *District of Columbia v. Wesby*, 138 S. Ct. 577, 589 (2018). "[Q]ualified immunity protects all but the plainly incompetent or those who knowingly violated the law." *City of Tahlequah v. Bond*, ___ S. Ct. ___, 2021 WL 4822664, at *2 (2021) (internal quotations omitted). Importantly, it is not the defendants' burden to prove that they are entitled to qualified immunity; rather, it is the *plaintiff's* burden to plead facts that demonstrate they are not. *Reyes v. Fowlks*, 2023 WL 4486155, at *2 (10th Cir. 2023).

      **A.**    **Defendant Did Not Violate Plaintiff's Constitutional Rights.**

For the reasons explained above, Plaintiff has failed even to plead a prima facia claim of First Amendment retaliation. Defendant has qualified immunity for this reason alone.

      **B.**    **It Was Not Clearly Established That Plaintiff's Speech Was Not Pursuant To His Official Duties.**

Even if Plaintiff's rights were violated, Defendant is still entitled to qualified immunity because the constitutional violation was not clearly established. In assessing whether the plaintiff adequately pleads the violation of a "clearly established" constitutional right, "we have repeatedly told courts not to define clearly established law at too high a level of generality." *Bond*, 2021 WL 4822664, at *11. "It is not enough that a rule be suggested by then-existing precedent; the rule's contours must be so well defined that it is clear to a reasonable [state actor] that his conduct was unlawful in the situation he confronted." *Id.* "This inquiry must be undertaken in light of the specific context of the case, not as a broad general proposition," and "existing precedent must have placed the statutory or constitutional question beyond debate." *Rivas-Villegas v. Cortesluna*, 595 U.S. 1, at 5 (2021) (cleaned up). In the end, it is the plaintiff's affirmative burden to identify a case "from the Supreme Court or [the Tenth Circuit] finding a defendant liable under federal law in factually similar circumstances." *Cummings v. Dean*, 913 F.3d 1227, 1244 (10th Cir. 2019).

As it pertains to the "pursuant to official duties" inquiry prompted by *Garcetti/Pickering*, the Tenth Circuit has held that, to overcome qualified immunity, the plaintiff must plead facts demonstrating it was clearly established that the speech in question was *not* pursuant to the employee's official duties. *See Knopf v. Williams*, 884 F.3d 939, 950-51 (10th Cir. 2018). This is a difficult hurdle, to say the least, because whether speech is or is not pursuant to official duties is a complex and fact specific analysis, meaning it is unlikely a reasonable official would have known at the time that speech was outside the scope of official duties. *See id.* at 956 (Ebel, J., concurring).

While it is solely Plaintiff's burden to come forward with a factually analogous Tenth Circuit or Supreme Court case establishing his claimed speech was outside the scope of his official duties, it is notable that there is no case in the Tenth Circuit holding that a faculty member's internal disclosures about alleged FERPA violations is *not* speech pursuant to the employee's official duties. Similarly, there is no case in the Tenth Circuit holding that a culinary instructor's internal complaints about food quality and purchasing practices for food are *not* speech pursuant to the employee's official duties. And there is no case in the Tenth Circuit holding that a vague allegation that a faculty member reported sex discrimination and harassment is sufficient to establish speech outside the employee's official duties, *especially* where institutional policy placed a responsibility on all employees to maintain a discrimination and harassment free workplace.

Moreover, Tenth Circuit caselaw is filled with cases where the Court held that an employee's internal disclosures, up the chain of command, ***are*** speech pursuant to their official duties. *See, e.g.*, *Rohrbough*, 596 F.3d at 747. By contrast, those Tenth Circuit cases holding that an employee's speech is not pursuant to their official duties, and therefore potentially protected despite *Garcetti*, usually involve public disclosure to an outside entity, such as the media, a state regulatory body, and/or involve disclosure in a public forum where the distinction between

employee and citizen status is clear. *See, e.g.*, *Casey v. W. Las Vegas Indep. Sch. Dist.*, 473 F.3d 1323, 1332 (10th Cir. 2007) (employee's report to state attorney general about open meetings violation was outside chain of command and not pursuant to official duties).

Here, all of Plaintiff's alleged complaints were *internal* and made *up the chain of command*; there is no allegation he made complaints or raised concerns externally. Thus, if anything, a reasonable person in Defendant's position would have expected that Plaintiff's speech was *not* protected because it was speech pursuant to the employee's official duties. And they certainly would not have known, "beyond debate," that his speech fell outside his official duties. *See Knopf*, 884 F.3d at 950-51; *see also Lincoln v. Maketa*, 880 F.3d 533, 538-39 (10th Cir. 2018).

Because it was not clearly established that Plaintiff's complaints were not made pursuant to his official duties, Defendant is entitled to qualified immunity.

### C. It Was Not Clearly Established That Defendant Cross Caused Plaintiff's Termination.

In addition, it was not clearly established that Defendant Cross could be liable on a wrongful discharge theory of retaliation where the Board, as a whole, was the ultimate decision-maker, and the Board's termination decision was subject to review by an independent hearing officer. Moreover, Plaintiff has not alleged that Defendant Cross took any action in making the termination decision as a board member.

Plaintiff seeks to hold one single board member liable for causing the Board, as a whole, to make a termination decision. However, Plaintiff has made no allegations that Defendant Cross was in any way involved with the Board's termination decision. Moreover, there is no case where such a theory has resulted in *personal* liability for a recommending a single board member who was not involved in a termination decision, especially when the termination decision is subject to

a statutory review process before an independent hearing officer, and certainly not a case where, as here, that independent hearing officer concluded there was no retaliation. Thus, even if the College as an entity could be liable for First Amendment retaliation (it is not), Plaintiff still must point to existing authority demonstrating how it was clearly established that the actions Defendant Cross, as and individual, violated his constitutional rights. *See Pahls v. Thomas*, 718 F.3d 1210, 1225-26 (10th Cir. 2013) ("When various officials have taken different actions with respect to a plaintiff, the plaintiff's facile, passive-voice showing that his rights 'were violated' will not suffice."). Because Plaintiff cannot do this, the Defendant Cross has qualified immunity.

## CONCLUSION

This Court should dismiss all claims against the Defendant Cross.

Date: July 3, 2024.

    Respectfully submitted,

    MORROW WILLNAUER CHURCH, L.L.C.

By: */s/Daniel F. Church*
    DANIEL F. CHURCH    #12100
    BLAKE H. BUTNER    #28039
    8330 Ward Parkway, Suite 300
    Kansas City, Missouri 64114
    (816) 382-1382
    Facsimile: (816) 382-1383
    dchurch@mwcattorneys.com
    bbutner@mwcattorneys.com

    *ATTORNEYS FOR DEFENDANT CROSS*

## CERTIFICATE OF SERVICE

  I hereby certify that on July 10, 2024, I filed the foregoing document via the Court's ECF system, which will cause a true and correct copy of the same to be served electronically on all ECF-registered counsel of record.

                   */s/Daniel F. Church*
                   *ATTORNEY FOR DEFENDANT CROSS*